# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY WHITE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | 1:06cv0560 DLB<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**BACKGROUND**

Plaintiff Kimberly White ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

///

///

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 28, 2006, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed for disability insurance benefits and supplemental security income on August 27, 2003, alleging disability since August 29, 2001, due to problems with her lower back, high blood pressure, edema, an enlarged heart and a bone spur in her right arm. AR 66-69, 77-86, 87-96, 266-269. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 47-51, 54-58, 60. On March 30, 2005, ALJ Mary Everstine held a hearing. AR 325-342. She denied Plaintiff's claim on May 16, 2005. AR 14-25. On March 18, 2006, the Appeals Council denied review. AR 8-11.

Hearing Testimony

ALJ Everstine held a hearing on March 30, 2005, in Bakersfield, California. Plaintiff appeared with her attorney, Geoffrey Hayden. Vocational expert ("VE") Kenneth Ferra also appeared and testified. AR 325.

Plaintiff testified that she was born in 1956, lives with her sister and completed the twelfth grade. AR 328. She indicated that she has not worked at all since August 2001. She believed that she could not work because of pain in her lower back when she walks and sits. She further explained that she cannot bend and that the pain goes down her right leg and into her foot. AR 328-329. The pain is constant and her best position is lying down. AR 329.

Plaintiff spends most of her day laying down in bed. She further testified that she suffers from depression, high blood pressure, diabetes and cholesterol. AR 330. Her diabetes is under control but her high blood pressure, despite medication, causes symptoms off and on throughout the day. AR 330. She has been on numerous medications for depression and the current one does not seem to be working well. AR 330-331. She sees a counselor once every two to three months. AR 331. Although Plaintiff tried physical therapy for her back, it did not help. AR 331.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff believed that she could stand about five minutes at one time and a total of 30 minutes throughout the day. AR 331-332. Walking is worse. She thought she could sit for about 10 minutes at one time and a total of about one hour. AR 332. She could lift and carry a gallon of milk (about eight pounds), but could not do so continuously. AR 332.

Plaintiff does not do any household chores but is still able to take care of herself. Her back hurts when she takes a shower, though. AR 333. She has trouble with memory and concentration, and explained that she has trouble absorbing things that she reads or watches. AR 333. While her sister is at work, Plaintiff is able to reheat food in the microwave. AR 333. On a typical day, she gets out of bed to heat up meals and use the restroom. AR 334.

When questioned by her attorney, Plaintiff testified that she is 5'4" tall and weighs 300 pounds. AR 334. Her problems cause her to have accidents daily, and although she wears protective undergarments, she would have to be near a restroom while working. AR 335.

Plaintiff explained that her back pain is worse in her lower back, off to the right. Her doctors have indicated that surgery would not help. If she is laying down, she rates her pain as a six. If she's walking, she rates her pain as a nine. AR 335. She said she sleeps all the time, and cannot tell if that is a side effect of the medication or results from her depression. AR 336.

Reaching overhead causes her arms to fall asleep and she can easily drop things that she picks up with her right hand. AR 336. She cannot kneel, stoop or squat. Plaintiff has no social life. AR 336.

For the first hypothetical, the ALJ asked Mr. Ferra to assume a person of Plaintiff's age, education and experience. This person retains the residual functional capacity ("RFC") for sedentary work, but is limited to simple, repetitive tasks that require no constant reaching (frequent reaching is okay). She cannot bend, squat, crawl or climb. The VE testified that she cannot perform her past work but could perform some assembly jobs and packer positions. These positions would be eroded by 95 percent to accommodate the restriction to simple, repetitive tasks. AR 337-338.

If this person required a restroom break more frequently than normal, the VE believed that one additional break in the morning and afternoon could be accommodated. AR 339.

If this person could stand for four hours and walk for three hours out of an eight hour day, this person could not perform any work. AR 339.

Plaintiff's attorney asked the VE is there were any jobs for a person who could sit for four hours, stand for 30 minutes and walk for 30 minutes. This person could not perform work. AR 340.

Plaintiff's attorney next asked the VE to assume the person in the first hypothetical, but to further assume that this person could not concentrate for two hour increments. This person could not perform any work. AR 340.

Assuming the first hypothetical again, if this person would miss more than two days of work per month because of pain, and would need at least two to three additional ten-minute breaks during the day, this person could not work. AR 341.

Medical Record

______A lumbar spine x-ray performed in September 2001, revealed early degenerative spondylitis and/or degenerative disc disease noted at L5-S1, with foraminal narrowing. AR 156.

______Plaintiff underwent an MRI on December 31, 2001, which revealed degenerative disc disease of L5-S1, posterior spurring at the interior end plate of L5, and posterior right lateral disc protrusion of L5-S1. AR 155.

______On April 15, 2002, Richard Smith, M.D., examined Plaintiff and reviewed her normal test results. Dr. Smith opined that there is a "high likelihood" that Plaintiff did not have ischemic heart disease and that from a cardiac point of view, she could carry on normal day-to-day, unrestricted, unlimited activity. AR 132-133.

______On May 6, 2002, Plaintiff reported that her boyfriend recently passed away and that she was very stressed. Her lower extremity edema was improved with medication. She was diagnosed with insomnia due to bereavement and prescribed medication. AR 143.

Plaintiff underwent a successful laparoscopic cholecystectomy on May 15, 2002. AR 158.

Plaintiff was examined on April 30, 2003. She indicated that she was still depressed despite Wellbutrin, had cut down on smoking, that Motrin wasn't relieving her back pain and

that she had numbness and tingling in her feet and knees. The doctor noted that she was morbidly obese. AR 183.

In July 2003, Plaintiff complained of depression and an increase in her knee and back pain. Upon examination, her right knee was swollen. Her medication was switched to Zoloft and she was referred to counseling. AR 178-179.

X-rays of Plaintiff's lumbar spine taken on October 8, 2003, revealed degenerative changes of the lumbosacral spine and the bilateral sacroiliac joints. AR 176.

On October 30, 2003, Plaintiff was examined by Sarupinde Bhangoo, M.D. She complained of chronic low back pain for the past two years, depression and diabetes. Plaintiff complained of constant back pain that worsened with moving, coughing or sneezing. She was able to get around with the help of a cane. Her diabetes was under fair control. Plaintiff reported that she was able to perform personal care and some light housework.

Plaintiff was described as a very obese female who walked with the help of a cane, which she leaned on "a bit." She had some difficulty getting up and down from the examination table. Plaintiff's pulses were 4/4 bilaterally, her gait was antalgic, and she was unable to do tip-toe and heel walking. Straight leg raising was positive on the right side and motor strength was 5/5. There was some decrease in sensation to touch on the lateral outside of the right thigh. Reflexes were elicited but weak. Overall, her examination was somewhat difficult because of her extreme obesity. Dr. Bhangoo diagnosed chronic lumbar strain, most likely due to obesity and degenerative disc disease. AR 215-218. Dr. Bhangoo believed that a lot of her disability pertained to her obesity. She did suffer from degenerative disc disease that could have progressed recently, but she did not suffer from a neurological deficit except for some decrease in sensation in the area of lumbar 2-3. Plaintiff could do lumbar flexion up to 90 degrees, but had great difficulty straightening up. AR 218.

Dr. Bhangoo opined that Plaintiff could stand and walk about four hours in an eight hour day, and sit for eight hours. She walked with a cane. She could easily lift and carry 25 pounds occasionally and 10 pounds frequently. Plaintiff did not appear to have any manipulative

limitations in reaching, etc. He believed that Plaintiff was confined to at least light exertional duty with some limitation of bending. AR 218-219.

In November 12, 2003, Plaintiff was seen by Michael Musacco, Ph.D. Plaintiff reported that her depression began in 1997 when a boyfriend died of a heart attack. Her fiancé died in his sleep in 2002. Plaintiff reported that she spent most of the day sleeping, watching television and reading. She helps with household chores to the extent that she can, but is extremely limited. On mental status examination, Plaintiff was oriented to date, month and year. She ambulated with the use of cane. Her affect ranged from pleasant to tearful and she endorsed a variety of symptoms consistent with depression. Her general fund of knowledge was impoverished, but her attention-concentration skills, immediate memory skills and abstract reasoning skills were intact. Dr. Musacco diagnosed depressive disorder, not otherwise specified. He indicated that her daily activities and social functioning have been impacted, and that she experiences decreased energy and motivation. However, her attention-concentration skills were intact and she was not vulnerable to episodes of emotional deterioration in a work-like situation. AR 220-223.

On December 18, 2003, State Agency physician Arthur Jing, M.D., completed a Physical Residual Functional Capacity form. Dr. Jing opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently. She could stand and/or walk for at least two hours in an eight hour day, but needed a cane to ambulate on uneven ground. She could sit for about six hours in an eight hour day. Plaintiff was limited in her ability to push and pull with her lower extremities. She could occasionally climb, stoop, kneel, crouch and crawl. AR 244-251. This opinion was affirmed in 2004. AR 251.

In January 2004, State Agency physician Luyen T. Luu, M.D., reviewed the evidence and opined that Plaintiff had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence and pace. She had moderate difficulties in maintaining social functioning. In a Mental Residual Capacity Assessment form, Dr. Luu opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. Plaintiff could, however, understand, remember and carry out simple instructions, perform activities with directions without additional support, and maintain attention in two hour

increments. She could also maintain socially appropriate behavior, accept instructions, respond appropriately to criticism from supervisors and interact appropriately with the general public. Plaintiff also had sufficient ability to appropriately respond to changes in the work setting. AR 225-241.

On January 28, 2004, Plaintiff indicated that she was not having any problems with activities of daily living. AR 301.

On a March 15, 2004, memo, Michelle Ababa, M.D., indicated that Plaintiff could not work secondary to degenerative joint disease and osteoarthritis of her spine. AR 260.

On May 24, 2004, Dr. Ababa completed a Physical Capacities Evaluation form. She opined that Plaintiff could sit for eight hours, stand for three hours and walk for three hours. She could frequently lift and carry 10 pounds and occasionally lift up to 25 pounds. She could not use her feet for repetitive movements, and could never bend, squat, crawl or climb. Plaintiff could frequently reach. Dr. Ababa further opined that Plaintiff had mild restrictions at unprotected heights and in proximity to moving machinery. AR 259.

Dr. Ababa encouraged Plaintiff to exercise during a July 2004, visit. AR 293.

On November 30, 2004, Plaintiff requested that Dr. Ababa provide her with a letter that stated that she could not work. AR 276.

In February 2005, Dr. Ababa indicated that Plaintiff's only major complaint was chronic back pain. On examination, there was no cyanosis or edema. AR 274-275.

On March 21, 2005, Dr. Ababa indicated that Plaintiff could perform no more than sedentary work because of her arthritis of the lumbosacral spine and sacroiliac joints. During an eight hour day, Plaintiff could sit for four hours and stand and walk for 30 minutes each. She did not need to lay down or elevate her legs. Dr. Ababa opined that these restrictions have existed since November 2004. AR 265.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of degenerative disease of the knees, degenerative disc disease, chronic lumbar strain, obesity, depression and diabetes. After reviewing the medical evidence and determining that Plaintiff was not fully credible, the

ALJ determined that Plaintiff retained the RFC to perform a significant range of sedentary work. AR 20-23. Based on the Medical Vocational Guidelines and the testimony of the VE, the ALJ concluded that Plaintiff could perform work as an assembly worker and handpacker. AR 24-25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disease of the knees, degenerative disc disease, chronic lumbar strain, obesity, depression and diabetes) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retained the RFC to perform a significant range of sedentary work and was therefore not disabled. AR 24-25.

Plaintiff argues that the ALJ (1) failed to properly evaluate her use of a cane; and (2) failed to carry the burden at step five.

**DISCUSSION**

A. Plaintiff's Use of An Assistive Device

Plaintiff first contends that the ALJ failed to assess her nonexertional limitation of required use of a cane. She points to the notations of Dr. Bhangoo, Dr. Musacco and Dr. Jing that Plaintiff either used and/or required a cane. Plaintiff also cites the objective evidence which she contends supports her position.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. SSR 96-8p. In addition, the adjudicator

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

"must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" because such limitations may be outcome determinative when considered in conjunction with limitations or restrictions resulting from other impairments. SSR 96-8p.

Here, the ALJ found that Plaintiff retained the RFC to lift and carry five pounds frequently, 10 pounds occasionally, to sit for six hours and to stand and/or walk for two hours. Plaintiff could not perform repetitive bending, balancing, stooping, kneeling, crouching, squatting, crawling or climbing, and was precluded from constant reaching. AR 22. Based on this RFC, she determined that Plaintiff could perform a significant range of sedentary work.

Plaintiff is correct that the ALJ did not specifically mention Plaintiff's use of a cane. However, the ALJ did review and/or adopt the opinions of physicians who were aware that Plaintiff used a cane. For example, the ALJ reviewed the consultive examination performed by Dr. Bhangoo, who noted that Plaintiff walked with the help of a cane and that she leaned on it "a bit." AR 216. In his functional assessment, he stated that Plaintiff "walks around with a cane." AR 218. Nonetheless, Dr. Bhangoo opined that she could stand and walk about four hours in an eight hour day, sit for eight hours, and could "easily" lift and carry 25 pounds occasionally and 10 pounds frequently. In fact, Dr. Bhangoo, who examined Plaintiff and observed her using her cane, imposed a *less* restrictive RFC than the ALJ.

Similarly, State Agency physician Dr. Jing indicated that Plaintiff's cane was medically required, at least for ambulation on uneven ground. Dr. Jing determined that Plaintiff could stand and/or walk for at least two hours in an eight hour day, could sit for about six hours in an eight hour day, and could occasionally lift and carry 20 pounds, 10 pounds frequently. AR 245.

An ALJ need not discuss *all* evidence submitted by the claimant. Rather, she must explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (internal citations omitted). Here, although Plaintiff's use of a cane was not specifically discussed, it was taken into consideration by the physicians, the opinions of whom the ALJ ultimately adopted. In any event, given the supported RFC finding, there is nothing significant or probative about Plaintiff's use of a cane.

The fact that she uses a cane, standing alone, does not warrant special consideration. Although Plaintiff argues that the ALJ should have considered it pursuant to SSR 96-9p to determine any resulting erosion on the sedentary occupational base, there is no evidence that her use of the cane eliminates *any* of the sedentary occupations. As stated in SSR 96-9p, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing . . ." Although three physicians noted her use of the cane, the notations were made because Plaintiff arrived at the examinations using the cane. In other words, there is nothing in the record that suggests that a cane was ever prescribed, or that any physician, treating or otherwise, deemed her use of the cane to be medically necessary. Dr. Bhangoo simply states that Plaintiff "walks around with a cane." AR 218. Additionally, Dr. Jing, who was the only physician to indicate that her cane was required in any way, noted that it was only medically necessary in ambulating on uneven ground. AR 245. SSR 96-9p specifically states that if a "medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded."

Plaintiff's argument that the ALJ's opinion was deficient because she did not explore her use of cane is without merit and must be denied.

B. Step Five Finding

Plaintiff next argues that the ALJ failed to carry the Commissioner's burden at step five because she failed to include either Plaintiff's use of a cane or her social limitations in the hypothetical questions posed to the VE. As to her social limitations, Plaintiff points to the ALJ's finding that she has moderate limitations in social functioning and argues that this equates to a significant impact on her ability to perform work.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's

residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Here, the ALJ determined that Plaintiff retained the RFC to perform unskilled, sedentary work, but could not perform constant reaching or any bending, squatting, crawling or climbing. In her decision, ALJ Everstine relied on the VE testimony in finding that Plaintiff could perform sedentary, unskilled work as an assembly worker (17,000 positions in California) and hand packer (400 positions in California). There would be no erosion for a limitation to unskilled work and it would be acceptable for this person to have two bathroom breaks in the morning and two in the afternoon. AR 23-24.

Plaintiff cites the VE's finding that a limitation to simple, repetitive tasks would result in a 95 percent erosion in the available positions in arguing that the ALJ impermissibly found an ability to perform unskilled work rather than a restriction to simple, repetitive tasks. Plaintiff believes that because a 95 percent erosion would require a finding of disabled, the ALJ "molded her findings to fit" the VE testimony and made the "illegitimate jump to unskilled work rather than simple work." Opening Brief, at 7. However, while Dr. Luu noted moderate limitations in social functioning, she identified no restrictions in social interaction and determined that Plaintiff had the ability to maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, and interact appropriately with the general public. AR 235, 241. So then, despite her findings of a moderate limitation in social functioning, Plaintiff was able to maintain sufficient functioning to maintain adequate interaction and behavior.

Additionally, although Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, Dr. Luu specifically noted that she had sufficient ability to understand, remember and carry out simple instructions. Although Dr. Luu affirmatively opined that Plaintiff could perform simple, repetitive tasks but was moderately limited in performing more detailed tasks, she did not *specifically limit* Plaintiff to performing simple, repetitive tasks, as Plaintiff argues. The ALJ did not "mold" her findings, but rather

declined to find a limitation to simple, repetitive tasks. Her decision was supported by the record as set forth above.

Plaintiff is correct that there is somewhat of a distinction between unskilled work and work that requires only simple, repetitive tasks. However, as explained above, the record does not necessarily support a limitation to simple, repetitive tasks. Moreover, given the medical record before the ALJ, the distinction is one without a difference. *See* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time.... [W]e consider jobs unskilled if ... a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.") (emphasis added).

Plaintiff's assertion that the ALJ failed to include her use of a cane in the hypothetical fails for the same reasons that the Court explained that the ALJ did not err in not including the cane in the RFC finding.

The ALJ's finding that Plaintiff can perform unskilled work is consistent with her abilities as set forth in the medical record. Plaintiff's argument is without merit and must be denied.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Kimberly White.

IT IS SO ORDERED.

**Dated:** **June 2, 2007**

/s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE